**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**

NAIZARETH YOLIMAR ARMAS GABANTE                           PETITIONER

v.                                                                      No. 4:26-cv-266-BJB

JASON WOOSLEY, ET AL.                                           RESPONDENTS

**\* \* \* \* \***

**ORDER**

The Petitioner has filed a habeas petition seeking release or a bond hearing pending the outcome of removal proceedings.

Although courts across the country have divided on the question whether pre-removal detention is required or allowed under these circumstances, the U.S. Court of Appeals for the Sixth Circuit recently sided with detainees in Petitioner's position. The Court held, on May 11, 2026, that aliens captured and "detained within the interior of the United States who never affirmatively applied for admission," may be detained "only" as set forth in 8 U.S.C. § 1226. *Lopez-Campos v. Raycraft*, ---- F.4th ----, ----, No. 25-1965, 2026 WL 1283891, at \*2, \*11 (6th Cir. May 11, 2026). Aliens "like Petitione[r], who did not attempt lawful entry into the United States and are actively avoiding being inspected for lawful entry," the Court of Appeals held, "are not 'seeking admission' and are thus not subject to § 1225(b)(2)(A)'s mandatory detention scheme." *Id.* at \*4. Because the *Lopez-Campos* detainees likewise fell outside § 1226(c)'s mandatory-detention regime, they were therefore entitled to bond hearings as set forth in § 1226(a)'s implementing regulations. *See id.* at \*2–3 (describing this "permissive detention scheme"). And in any event, the panel went on to conclude, the Fifth Amendment's Due Process Clause independently entitled the "Petitioners [to] individualized bond hearings in light of the significant time they have spent within the interior of the United States." *Id.* at \*13.

*Lopez-Campos* doesn't answer every question surfaced by the wave of federal habeas petitions that followed the Executive Branch's recent tack in immigration enforcement and detention policy. But at least with respect to this petition and its request for release or bond, the Petitioner appears not to have been "seeking admission" as construed by the Sixth Circuit and therefore to stand in the same shoes as the *Lopez-Campos* petitioners. *See id.* at \*4–5 (discussing the meaning of "seeking admission"); *id.* at \*18, \*22 (Murphy, J., dissenting) (noting "rabbit holes" that may

1

trip judges applying this interpretation of "seeking admission" on an "applicant-by-applicant" basis). That is, according to the petition, the Petitioner was apprehended within the interior, had not formally applied for admission into the country, and had not been detained under § 1226(c) based on a criminal conviction or otherwise. And that status would seem to avoid the need to answer potentially difficult and fact-specific questions about whether the length and nature of Petitioner's residence within this country conferred a Fifth Amendment right to a bond hearing. *See id.* at *13 (majority opinion) (drawing on "the significant time [petitioners] have spent within the interior"); *cf. United States v. Escobar-Temal*, 161 F.4th 969, 977–78 (6th Cir. 2025) (applying a "fact-specific analysis" to determine whether the Second Amendment protected an alien who had long resided without permission in this country).

Given the petition's factual allegations and the *Lopez-Campos* holding, the law requires the Government to either release the Petitioner or provide a prompt bond hearing. *See Lopez-Campos*, 2026 WL 1283891, at *3 ("§ 1225(b)(2)(A) does not apply to noncitizens like Petitioners"). The Government must do so within 5 days and promptly update this Court on the outcome of any hearing, the status of the Petitioner, and any new or additional facts relevant to these proceedings. To the extent the Government contends (as it has recently suggested in several habeas proceedings) that this relief is unwarranted because the Petitioner was granted humanitarian parole under § 1182(d)(5)(A) or because an immigration judge has already found that the Petitioner was a flight risk or a threat to the public, the Government must clearly present those facts, any supporting exhibits, and legal justification(s) in the response to this order.